Jess L. GATLIN, Plaintiff/Appellee,

v.

CITY OF KNOXVILLE,
Defendant/Appellant.

Supreme Court of Tennessee,
at Knoxville.

Dec. 30, 1991.

Mary Longworth, Knoxville, for defendant/appellant.

J. Anthony Farmer, Knoxville, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

■ This worker's compensation appeal presents the question of whether or not an employee's mental disorder arose out of the course of employment and is compensable as either an occupational disease or injury by accident. The Chancellor found that the employee's mental disorder was an occupational disease caused by employment stress and therefore arose out of his employment, and awarded 100 percent permanent and total disability. Because we find that the mental disorder in this case was not caused by a sudden, acute, or unexpected mental stimulus, we conclude that the mental disorder did not arise out of employment and is neither an injury by accident, nor an occupational disease. Accordingly, we reverse the Chancellor's judgment.

## FACTUAL BACKGROUND

Beginning in November of 1974, the plaintiff, Jess L. Gatlin ("Gatlin"), was employed by the defendant City of Knoxville's Police Department ("City") until December of 1986, a period of twelve years. For the first five years of his employment he was a patrol officer, whose responsibilities included responding to traffic accidents, burglaries, domestic disputes, and suicides. Following his service as a patrol officer, he was assigned to the vice squad, where he was involved in undercover work in gambling and prostitution. These duties required that he be armed and work alone. He testified that while working undercover, he was in contact with armed felons and subject to fear of his true identity being exposed. Approximately one year following his vice squad duty, Gatlin was assigned to the auto theft division. This unit conducted raids, which required participating officers to enter suspected premises by force, breaking open doors with weapons drawn if necessary. From 1983 to 1986, Gatlin was assigned to the organized crime unit, which included narcotics, vice, and intelligence division work carried out through store front operations and stings. His role in the stings was to stand behind a wall with a firearm to protect the police agent.

A former police chief testified that the most dangerous positions in the Knoxville Police Department were in the specialized units, such as narcotics, organized crime, and vice, and that officers working in those departments were subject to the police department's most stressful conditions.

In December of 1986, Gatlin was diagnosed by Dr. Greenwood, a psychiatrist, as being profoundly depressed with psychotic symptoms, including paranoia, which consisted of a major affective disorder. As a result, he was totally and permanently disabled and required continued psychiatric care. Dr. Greenwood testified that Gatlin had a genetic predisposition to the disorder, and that absent environmental stresses, the disorder might never have materialized. Dr. Greenwood said that although other stresses, such as marital stress and general

job stress, could have been contributing factors, without the extreme stress of his police duties Gatlin might have never developed this severe a depression. Dr. Greenwood distinguished between the general stress of other employments and the special stress encountered by Gatlin in his particular police responsibilities, which involved threats to his personal safety and encountering violent situations.

Other environmental stresses experienced by Gatlin included the break-up of two marriages, a chronic battle over child custody from his second marriage, a separation in a third marriage, the arson of his home in which it was alleged his second wife was a suspect, and financial problems. Gatlin also suffered from paranoia, which affected his perception of lack of support from his co-workers. Dr. Greenwood testified, however, that both the financial problems and the paranoia were an after-effect of the mental disorder, rather than environmental factors which caused it. Dr. Greenwood also said that the biological component of Gatlin's disorder would have been there without the police experience, and that other types of stressful employment would have been equally likely to produce or contribute to his mental disorder.

Based on the foregoing, the Chancellor found that Gatlin's mental disorder was a compensable occupational disease and awarded 100 percent permanent and total disability benefits, together with future medical expenses.

The City argues on appeal that Gatlin's claim is not premised upon any acute and unexpected mental stimulus, but is grounded upon environmental factors, some of which arise out of the usual stress of his work and some of which are external to his work, which, combined with his genetic predisposition, caused his mental disorder. The City also contends that the Chancellor abused her discretion in admitting into evidence the psychiatrist's opinion about general job stress, as opposed to special job stress.

Gatlin responds that the evidence does not preponderate against the Chancellor's finding that his mental disorder was an occupational disease. In the alternative, he argues that the Chancellor erred in not finding his mental disorder compensable as an accidental injury, because his experience as an undercover police officer was not the stress or strain of daily living, but was a special stress beyond the general stress associated with ordinary employment and beyond the stress experienced by police officers in other, less dangerous work. He contends that recovery for accidental injury should not be based on one event of fright, shock or unexpected anxiety, but should encompass a mental disorder caused by gradual repetitive mental trauma.

The leading Tennessee case on stress-related injuries is *Jose v. Equifax, Inc.*, 556 S.W.2d 82 (Tenn.1977). In *Jose*, an insurance claims director alleged he had been exposed to tremendous on-the-job pressure and tensions, which caused a severe psychiatric illness and a habitual alcohol problem. We affirmed a motion to dismiss the complaint, noting his failure to state "with some specificity and clarity the accidental injury being claimed." We observed, however, that:

> In proper cases we are of the opinion that a mental stimulus, such as fright, shock or even excessive, unexpected anxiety, could amount to an "accident" sufficient to justify an award for resulting mental or nervous disorder.
>
> . . . .
>
> A liberal interpretation has been given to the statutory criteria of injury by accident, but this still does not embrace every stress or strain of daily living or in carrying out the duties of a contract of employment.

*Id.* at 84.

Later Tennessee cases continued to follow this approach. In *Allied Chemical Corp. v. Wells*, 578 S.W.2d 369 (Tenn.1979), a mental stimulus-physical injury case, we held there could be no recovery for a heart attack alleged to have been caused by chronic stress and emotional strain over job responsibilities based on a theory of injury by accident or occupational disease, because no particular unusual or sudden event involving emotional stress, fright or

shock triggered or precipitated the onset of the heart attack.

Thereafter, in 1984, in *Mayes v. United States Fidelity & Guaranty Co.,* 672 S.W.2d 773 (Tenn.1984), we considered whether a mental disorder, which resulted from the stress and strain of conducting a contracting business, was an occupational disease or an injury by accident, and concluded it was neither. We commented that "[t]he mental stimulus which precipitated the plaintiff's anxiety is not the type envisioned in *Jose,*" and that his experiences fell within the category of the usual stress and strain encountered in the operation of a contracting business. *Id.* at 775. *See also Henley v. Roadway Express,* 699 S.W.2d 150 (Tenn.1985) (plaintiff's mental disorder, caused by the stress of working on the third-shift, did not arise out of his employment).

In *Beck v. State,* 779 S.W.2d 367 (Tenn. 1989), the plaintiff was sexually accosted in the workplace by a stranger and suffered a post-traumatic stress disorder. We allowed recovery because the stressful event was specific, acute, sudden, and not the usual stress and strain of her job. *See also Black v. State,* 721 S.W.2d 801 (Tenn.1986), and *Cabe v. Union Carbide Corp.,* 644 S.W.2d 397 (Tenn.1983). (In both cases, an argument with a fellow employee was acute, sudden and unexpected stress, and when followed by a heart attack, constituted a compensable injury.)

Finally, just last year, in *Sexton v. Scott County,* 785 S.W.2d 814 (Tenn.1990), we refused to award benefits on a claim that general job stress and anxiety aggravated a heart condition, because there was no particular sudden, stressful, shocking or frightening event leading to the aggravation.

■ In summary, our past decisions have established a threshold test that the mental stimulus causing a mental or physical injury must be fright, shock, or an acute sudden or unexpected emotional stress. This threshold test is based on our

interpretation of the statutory language that injury "mean[s] an injury by accident arising out of and in the course of employment which causes either disablement or death of the employee and shall include occupational diseases...." Tenn.Code Ann. § 50–6–102(4) (1983 & Supp.1991). We have limited the interpretation of this language, holding that worry, anxiety or emotional stress of a usual nature in a particular occupation are not sufficient to establish an "injury by accident."

In this connection, Gatlin argues that the *Jose* injury-by-accident threshold test should not be applied to occupational diseases. He says that the 1977 amendment to the Occupational Disease statute, Tenn. Code Ann. § 50–6–301 (1983)[1], which allowed recovery for all diseases arising out of the course of employment, was not considered in *Jose v. Equifax* because the case was decided prior to the amendment. In addition, he asserts that the threshold test cannot be applied to an occupational disease because an occupational disease is covered by a separate statute and is therefore totally separate from an injury by accident. Gatlin contends our statement in *Jose* that we would impose no artificial limitation on coverage requires that we not apply the sudden mental stimulus test to occupational diseases.

In his argument, however, Gatlin misinterprets the cases that have applied the sudden mental stimulus test to occupational diseases after the 1977 amendment. In both *Mayes* (1984) and *Henley* (1985), *supra,* we rejected the proposition that gradual stress and strain could support compensation based on an occupational disease theory. In addition, an injury by accident is not separate from an occupational disease in terms of legal analysis because they both fall within the statutory definition of "injury." *See* Tenn.Code Ann. § 50–6–102(4).

Furthermore, Professor Arthur Larson, in § 42–23(f) of his treatise, *The Law of Workmen's Compensation* (1991), identi-

---

**1.** "'Occupational diseases' defined.—As used in the Workers' Compensation Law, the term 'occupational diseases' shall mean all diseases aris-ing out of and in the course of employment...."

fies only four states—Georgia, Texas, New Mexico, and Oregon—as recognizing that a mental disorder caused by mental stress can be an occupational disease. Moreover, the worker's compensation statutes in both Texas and Georgia have been amended, and later cases interpreting those statutes suggest both states have shifted their position. In contrast, the approach of a number of other states, either by statute or case law, has been to apply a similar threshold test for both occupational disease and injury by accident. *See* 1B Arthur Larson, *The Law of Workmen's Compensation,* §§ 42.23–42.23(b) (1991).

Next, Gatlin argues that his mental disorder was, if not a compensable occupational disease, then an injury by accident. As an undercover police officer, he contends that his experience was not the stress or strain of daily living, but was a special stress beyond the general stress associated with ordinary employment and also beyond the stress experienced by police officers in less dangerous work.

In this context, Gatlin urges that we adopt a test that would allow recovery for gradual occupational stress. Some other courts have adopted such a formula in mental stress cases. Arizona, Maine, Massachusetts, and Wisconsin, have all rejected the sudden mental stimulus test and allowed for recovery for gradual stress, provided the stress was greater than the ordinary stress of everyday work. *See Townsend v. Maine Bureau of Pub. Safety,* 404 A.2d 1014 (Me.1979); *Kelly's Case,* 17 Mass.App. 727, 462 N.E.2d 348, *aff'd,* 394 Mass. 684, 477 N.E.2d 582 (1985); *School District No. 1 v. Department of Industry, Labor & Human Relations,* 62 Wis.2d 370, 215 N.W.2d 373 (1974). For example, the Arizona Supreme Court, in *Sloss v. Industrial Commission,* 121 Ariz. 10, 588 P.2d 303 (1979), held that although an employee can recover for disability from gradual stress, a highway patrolman who suffered from chronic anxiety because of work pressures could not recover because the stresses to which he was exposed were no greater than those imposed upon all other highway patrolmen in the same type duty.

A distinct minority of jurisdictions do not impose any threshold limitations in mental disability cases. The first court that adopted this approach (that a gradual mental stress injury may be compensable even if not unusual) was the Supreme Court of Michigan in *Carter v. General Motors,* 361 Mich. 577, 106 N.W.2d 105 (1960). Professor Larson observes, however, that after the adoption of the Michigan rule in California, the number of stress injury claims dramatically increased, and that studies estimated that mental stress injuries might be 17 percent of all California lost time injuries. 1B Larson, § 42.25(a).

Lawrence Joseph discusses varying judicial approaches to the gradual mental stress cases in his comprehensive article entitled, *The Causation Issue in Workers' Compensation Mental Disability Cases,* 36 Van.L.Rev. 263 (1983), and observes that:

> These cases create more apprehension about fraudulent claims and the genuineness of the causal relation between employment and the mental injury than do cases in which the plaintiff alleges that the causal stimulus is a traumatic mental impact. To some extent courts can measure objectively shock or fright when these conditions result from temporally and spatially definite employment events. Nonimpact mental stresses—the gradual stresses of employment—are no more subjective than mental stress that results from an identifiable traumatic event. A discernible objective event, however, a "badge of reliability," is not present when the alleged causal mental stimuli are gradual. Their subjective nature, therefore, is less visibly susceptible to objective measurement.

Joseph, 36 Van.L.Rev. at 291, n. 113.

Our review of the extensive literature in the field and the cases decided since 1977 convinces us the threshold requirement required in *Jose v. Equifax, supra,* remains sound, and that for a mental injury by accident or occupational disease to arise out of employment, it must be caused by an identifiable stressful, work-related event producing a sudden mental stimulus such

as fright, shock or excessive unexpected anxiety, and therefore it may not be gradual employment stress building up over a period of time. In addition, the stress produced may not be usual stress, but must be extraordinary and unusual in comparison to the stress ordinarily experienced by an employee in the same type duty.

Our examination of the record in this case demonstrates that the proof here does not meet the *Jose* test of an identifiable stressful event producing a sudden fright, shock or excessive unexpected anxiety, and therefore plaintiff did not suffer an injury by accident or an occupational disease arising out of his employment. The decisive issue having been determined, we pretermit the remaining issue as to the admission of the psychiatrist's expert opinion. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this Opinion. Costs of the appeal are taxed to the appellee, Jess L. Gatlin.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.