**Veronica GOODLOE**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee, at Nashville.

Jan. 19, 2001.

Tracy W. Moore, Columbia, TN, Kathleen W. Stratton, Nashville, TN, for the appellee, Veronica Goodloe.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Heather C. Ross, Assistant Attorney General, for the appellant, State of Tennessee.

## OPINION

ANDERSON, C.J., delivered the opinion of the court, in which DROWOTA, HOLDER, and BARKER, JJ., joined.

In this workers' compensation case, the employee, Veronica Goodloe, has appealed from a judgment of the Tennessee Claims Commission denying her claim for benefits filed against the employer, Columbia State Community College. The employee, who suffered from pre-existing depression, had a mental breakdown after being informed by her supervisor that she might be terminated. The Tennessee Claims Commission granted summary judgment to the employer on the basis that the employee's mental breakdown did not result from an event producing sudden fright, shock, or excessive unexpected anxiety. The Special Workers' Compensation Appeals Panel, upon reference for findings of fact and conclusions of law pursuant to Tenn.Code Ann. § 50–6–225(e)(3) (1999 & Supp.2000), held that summary judgment was improperly granted and remanded the case for trial. Thereafter, the employer filed a motion for full Court review of the Panel's decision. We granted the motion to decide whether the employee's psychiatric injury arose out of her employment because it resulted from the type of identifiable

stressful, work-related event producing sudden fright, shock, or excessive unexpected anxiety to justify a recovery. After carefully examining the record and considering the relevant authorities, we hold that the employee's mental injury is not compensable. Therefore, we reject the findings of fact and conclusions of law of the Panel and affirm the judgment of the Claims Commission.

## BACKGROUND

The employee, Veronica Goodloe, was hired to work as a typesetter in 1982 by Columbia State Community College in Columbia, Tennessee. In 1993, the employee filed suit seeking workers' compensation benefits for depression stemming from conflicts with a supervisor. The claim was denied and no appeal was taken. The employee continued working for the employer, although she began seeing a psychiatrist for depression. In 1994, she was transferred to work in the employer's printing department.

In January 1995, the employee began hearing rumors that management personnel were looking for a reason to terminate her employment. A month later in February 1995[1], the employee asked her friend and supervisor, Bob Ward, whether the "Sword of Damocles" was still hanging over her head.[2] According to the employee, Ward replied:

> Veronica, you are out on a limb. Dr. Sands wishes he had fired you before. Several administrators have told me that if you make one wrong move you'll be fired. They don't have anything on you (no documentation) but they'll still do it. It's a shame, because I don't think you've done anything wrong. In fact if I were you I would start looking for another job.

Ward testified, however, that the conversation occurred on February 9th and that he only told the employee that she was out on a limb and that she needed to do her job and keep quiet. Ward denied any conversation with her on February 23rd. Regardless, on February 23rd the employee, who was already depressed due to the recent death of her dog, returned to her desk and ingested approximately 50 tablets of anxiety medication. She was hospitalized and treated for the overdose. After recuperating, the employee returned to work, but was terminated in 1996 when the printing department closed.

The employee filed suit before the Claims Commission seeking benefits for her mental injury, asserting that her conversation with Ward in February 1995 was the cause of her mental breakdown. According to the employee, she took the overdose of pills because she was upset that she might lose her job and was "trying to make the pain go away." However, the employee did not view Ward as a threat to her because they were friends and had a good working relationship. The employee testified that she never had any confrontations with Ward and that they "got along very, very well." Ward never threatened to terminate the employee himself, and neither party raised their voices during the conversation. The employee did not take the conversation with Ward as a threat or warning but "as somebody who [was] giving [her] advice."

The employee presented medical proof tending to show that her psychiatric condition (severe depression) rendered her totally and permanently disabled.[3] The

---

**1.** There is a conflict in the record as to when this conversation occurred. The employee contended in one version that it was earlier in February and in another that it was February 23rd. Ward denies it was February 23rd.

**2.** A sword was suspended by a single hair over the head of Damocles, guest at a banquet given by Dionysius the Elder, a Greek tyrant of Syracuse, as a reminder of the insecurity of a tyrant's happiness. The phrase is used to describe imminent danger. *Webster's Third New International Dictionary* (unabridged) 2314 (1993).

**3.** However, this Court has previously held that a mental injury is an injury to a scheduled member under Tenn.Code Ann. § 50–6–207(3)(A)(ff). *See Ivey v. Trans Global Gas & Oil*, 3 S.W.3d 441, 446 (Tenn.1999).

medical proof also showed that the employee has a history of psychiatric problems and has taken medication for depression and anxiety since 1991. Her physicians' opinion was that the conversation with Ward precipitated the overdose and subsequent hospitalization. They also believed that the death of a pet dog was partly responsible for the employee's mental breakdown, as was the cumulative strain over the possibility of losing her job.

The Claims Commissioner found that the employee's psychiatric condition had not been caused by an identifiable stressful, work-related event, but by a combination of factors, including pre-existing depression and anxiety; a gradual build-up of employment-related stress; and the death of her dog. The Commissioner also found that the February 1995 exchange with Ward was not an "event producing sudden fright, shock or excessive unexpected anxiety" since the employee and Ward had a conversation one or two weeks earlier about the possibility of her termination. The Commissioner concluded:

> [A]nnouncements about being discharged from employment do not qualify ... as excessive unexpected anxiety. Workers' compensation law does not consider that any time an employer says to a depressed employee, "you're fired," the employer has thereby caused an industrial work-related accident; such an announcement, decently delivered, is merely an undesirable experience encountered in carrying out the duties of a contract of employment.

Accordingly, the Commissioner granted summary judgment to the employer.

The Special Workers' Compensation Appeals Panel held that summary judgment was improperly granted and remanded the case for trial. Thereafter, the employer filed a motion for full Court review of the Panel's decision. We granted the motion to decide whether the employee's mental injury resulted from an identifiable stressful, work-related event producing sudden fright, shock, or excessive unexpected anxiety which would justify a recovery.

## ANALYSIS

### *Standard of Review*

Ordinarily, the standard of review in a workers' compensation case is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (1999 & Supp.2000). However, when summary judgment has been granted in a workers' compensation case, the standard of review is governed by Tenn.R.Civ.P. 56. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991). Under Rule 56, a court must "review the record without a presumption of correctness to determine whether the absence of genuine and material factual issues entitle the movant to judgment as a matter of law." *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437–38 (Tenn.1998) (citations omitted). Furthermore, a court must view the evidence in a light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210–11 (Tenn. 1993) (citations omitted). Summary judgment should be granted only when the facts and inferences permit a reasonable person to reach only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995) (citing *Byrd v. Hall*, 847 S.W.2d at 210–11).

### *Compensability*

A mental injury is compensable under the workers' compensation scheme when it results from an identifiable stressful, work-related event producing a sudden mental stimulus such as fright, shock, or excessive unexpected anxiety. *Ivey v. Trans Global Gas & Oil*, 3 S.W.3d 441, 446 n. 10 (Tenn.1999). However, "worry, anxiety or emotional stress of a general nature" is not compensable, *see Allied Chem.*

*Corp. v. Wells,* 578 S.W.2d 369, 372 (Tenn. 1979), because the workers' compensation system "does not embrace every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment." *See Jose v. Equifax, Inc.,* 556 S.W.2d 82, 84 (Tenn.1977). Further, a mental injury that results from the accumulation of normal job-related stress is not compensable, *see Gatlin v. City of Knoxville,* 822 S.W.2d 587, 591–92 (Tenn.1991), because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." *See Allied Chem. Corp. v. Wells,* 578 S.W.2d 369, 373 (Tenn.1979). Thus, "the stress produced may not be usual stress, but must be extraordinary and unusual in comparison to the stress ordinarily experienced by an employee in the same type duty." *Gatlin v. City of Knoxville,* 822 S.W.2d at 592.

We have applied these principles in several situations analogous to the present one. For example, in *Cigna Property & Cas. Ins. Co. v. Sneed,* 772 S.W.2d 422 (Tenn.1989), the employee sought benefits for an emotional injury after she was informed that she had been discharged. The employee became upset and deeply depressed over what she deemed to be unfair conduct of the employer in terminating her employment. *Id.* at 424 We held that the employee's mental injury was not compensable, noting that there had been no angry or heated confrontation between the employee and employer. *Id.* We also noted that "[c]oncern over employment terms and conditions occurs in all types of occupations and is an inevitable concomitant of any contract of employment." *Id.*

In an earlier case, *Clevenger v. Plexco,* 614 S.W.2d 356 (Tenn.1981), the employee was harshly reprimanded and told that unless his performance improved he would be fired. He suffered a nervous breakdown and was hospitalized. *Id.* at 357–58. We concluded that the worker's psychological injury was not compensable, finding

instead that the incident fell within the rule that an injury by accident does not embrace every stress or strain or undesirable experience encountered in the work place. *Id.* at 360.

Finally, in *Chapman v. Aetna Cas. & Sur. Co.,* 221 Tenn. 376, 426 S.W.2d 760 (1968), this Court rejected the argument that a worker who had a heart attack the day after learning that he was being terminated because his job had been eliminated had suffered a compensable injury. We noted that the employee's termination was normal job-related stress rather than the sudden and unexpected shock characteristic of a compensable accident. *Id.* at 762; *see also Allied Chem. Corp. v. Wells,* 578 S.W.2d 369 (Tenn.1979) (injury not compensable because the employee's demotion was not the type of sudden and unexpected emotional stress required for compensability).

We now turn to the present case and the application of the foregoing principles. The employee alleges that on the day of her overdose she was informed by her supervisor, Ward, that she was probably going to be fired. The employee presented medical evidence linking her mental breakdown to the conversation with Ward. Nonetheless, we are persuaded that even assuming that the incident described by the employee caused her mental breakdown, the employee's mental injury is not compensable. The employee and Ward were good friends; "got along very, very well"; had a good working relationship; and had never been involved in a confrontation. The employee did not take the conversation with Ward as a threat or warning, but as a friend giving her advice. Moreover, the employee acknowledged that there were no raised voices or other circumstances that would suggest an angry or heated confrontation. Finally, Ward's advice to the employee that she should look for another job was not unexpected news, as the employee had previously heard rumors that she might be fired. Indeed, she had a conversation with Ward

himself regarding her possible termination a week or two prior to her mental breakdown.

Based on the record before us, we find that the employee's mental injury did not result from the type of identifiable stressful, work-related event producing sudden fright, shock, or excessive unexpected anxiety to justify a recovery. As we have said before, "[c]oncern over employment terms and conditions occurs in all types of occupations and is an inevitable concomitant of any contract of employment." *Cigna Property & Cas. Ins. Co. v. Sneed*, 772 S.W.2d at 424. The workers' compensation system simply "does not embrace every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment." *Jose v. Equifax, Inc.*, 556 S.W.2d at 84. Rather, the stressful stimulus must be something beyond the normal ups and downs of the employment because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." *Allied Chem. Corp. v. Wells*, 578 S.W.2d at 373.

 If the employee in this case under these facts was entitled to recover benefits, then any employee who becomes anxious or depressed over an adverse employment decision or action, such as the possibility of losing a job; a poor evaluation; a transfer; a demotion; a layoff; and the like, would be able to recover benefits. Hence the rule that generalized fear or worry regarding job performance or job security does not rise to the level of a compensable injury. Again, "[n]ormal ups and downs are part of any employment relationship and, as we have said on many previous occasions, do not justify finding an 'accidental injury' for purposes of worker[s'] compensation law." *Bacon v. Sevier County*, 808 S.W.2d 46, 53 (Tenn.1991) (citations omitted).

Before concluding, we address the employee's assertion that some jurisdictions have adopted the rule that mental injuries caused by gradual or cumulative work-related stress are compensable and that we should as well. *See* 3 Arthur Larson, *Workers' Compensation Law* § 56.04(2) (2000). What the employee fails to point out, however, is that according to Professor Larson the correct analysis is not to rule out all gradual stimuli, but only gradual stimuli not greater than the day to day mental stress and tension which all employees experience on occasion. *Id.* § 56.04(2), at 56–24. Professor Larson's view is that "[t]he real distinction here should be, not between sudden and gradual stimuli, but between gradual stimuli that are sufficiently more damaging than those of everyday employment life...." *Id.*

 Tennessee law is consistent with this approach, for the settled rule in this state is that "[i]njuries are generally compensable as accidental injuries when they are precipitated by physical exertion or strain or a specific incident *or **series of incidents involving mental or emotional stress of an unusual or abnormal nature**." *Reeser v. Yellow Freight System, Inc.*, 938 S.W.2d 690, 692 (Tenn.1997) (bold added). Moreover, this Court has previously considered and rejected a pure gradual stress approach due to a concern over experiencing a dramatic increase in mental stress claims like that seen in other jurisdictions that have adopted the theory. *Gatlin v. City of Knoxville*, 822 S.W.2d at 591–92. The concern previously expressed by this Court over eliminating the requirement that the stressful, work-related event be something beyond the usual stress encountered in the work place remains today. Accordingly, we decline the opportunity to change established law by recognizing the compensability of mental injuries caused by gradual or cumulative work-related stress which is not abnormal or unusual in nature.

### CONCLUSION

In view of the foregoing discussion, we hold that the employee did not suffer a

compensable mental injury.[4] Therefore, we reject the findings of fact and conclusions of law of the Panel and affirm the judgment of the Claims Commission. Costs on appeal are taxed to the employee, Veronica Goodloe.

BIRCH, J., not participating.

---

4. The resolution of this issue renders moot another issue in the case, i.e., whether the employee's claim was timely filed. A different result, however, would have required a remand on this issue because the Claims Commission did not decide it. For this reason, it is recommended that trial tribunals decide all issues before them to ensure the prompt adjudication of justice.