# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 3, 2003 Session

# MARY GUESS  v.  SHARP MANUFACTURING CO. OF AMERICA, A DIVISION OF SHARP ELECTRONICS CORP.

**Appeal by Permission from the Supreme Court Special Workers'
Compensation Appeals Panel
Chancery Court for Shelby County
No. 99-1033-2     Hon. Floyd Peete, Chancellor**

---

**No. W2002-00818-WC-R3-CV - Filed August 27, 2003**

---

The dispositive issue in this workers' compensation action is whether, under the Tennessee Workers' Compensation Law, the plaintiff suffered a compensable mental injury stemming from perceived exposure to the Human Immunodeficiency Virus (HIV). The appellee filed a workers' compensation claim seeking relief based upon a chronic mental disorder that arose after she came into contact with the blood of a co-worker, whom she believed to be HIV positive. The Chancery Court for Shelby County found that the appellee had suffered a vocational disability as a result of the psychological consequences of the event and awarded benefits. Prior to argument and consideration by the Special Workers' Compensation Panel, an order was entered directing that the case be heard by the entire court. After conducting our own de novo review of the record, we hold that a plaintiff seeking workers' compensation benefits for a mental injury due to exposure to HIV must demonstrate actual exposure through a medically recognized channel of transmission. Accordingly, the Chancery Court erred in awarding benefits to the appellee based on a finding that the appellee suffered a 38% disability to her mental faculties. The judgment of the trial court is reversed.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Shelby County Chancery Court is
Reversed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ., joined.

Ronald L. Harper and R. Scott Vincent, Memphis, Tennessee, for the appellant, Sharp Manufacturing Company of America, a division of Sharp Electronics Corporation.

Donald A. Donati and John F. Canale, III, Memphis, Tennessee, for the appellee, Mary Guess.

# OPINION

## FACTUAL BACKGROUND

The appellee, Mary Guess, began working for the appellant, Sharp Manufacturing Company of America ("Sharp"), in 1984 as an assembly line worker. At the time of the trial, she was a fifty-year-old individual with a high school education and no other additional formal education or vocational training. On November 6, 1998, one of Guess's co-workers lacerated his hand, which resulted in some of the co-worker's blood getting on Guess's hand. While there was no penetrating injury to Guess, she testified that she had open cuts on her hands as well as a fresh manicure.

Guess testified that as a result of getting this blood on her hands, she was "out of control," "nervous," "screaming for help," "upset," "shaking," and "hysterical." She explained that she believed the blood that she got on her hands to be HIV positive. Her subjective conclusion that her co-worker had AIDS was based on the following: the co-worker was sick all the time; he had been isolated in the work environment; he had friends at work who had died of AIDS; he appeared very frail; he was on the mailing list of a gay rights organization; and he "looked and acted gay."

Guess testified that she was hysterical from the time of the incident and began having panic attacks about a week or so thereafter. She sought medical treatment from her family practitioner who took her off work for six weeks beginning November 11, 1998, due to "agitated depression." Guess testified that she has significant limitations as a result of her injury and subsequent condition. She disinfects her bathroom every time she uses it; she has only been able to go to restaurants with her family on a few occasions; she has difficulty sleeping; she tries to distance herself from others; and on the occasions that she attends church, she sits between her daughters for security. She has attended a few family gatherings, but stays by herself in a room. She no longer has sexual relations with her husband.

Appellant Sharp referred Guess to psychiatrist Dr. Joel Reisman and his partner, psychologist Dr. Roland Lee. Both Drs. Reisman and Lee have treated Guess since January 4, 1999 and were continuing to treat her at the time of trial. At trial, the court admitted into evidence the deposition testimony of these two doctors, as well as the deposition testimony of Dr. Michael Gelfand, a specialist in the field of infectious disease.

Dr. Reisman diagnosed Guess with Post-Traumatic Stress Disorder (PTSD) caused by the "work related injury of November 1998." Dr. Reisman has prescribed various medications to combat Guess's symptoms and continued to prescribe these medications at the time of the trial. Dr. Reisman assigned Guess a permanent impairment rating under the 5th edition of the American Medical Association Guidelines of a Class III, moderate impairment. He stated that Guess was vocationally impaired because she should not engage in assembly line or production work where blood could be shed, work involving the public, or work that would require a great deal of concentration or focus.

Dr. Lee testified that Guess's psychological condition was caused by her fear of being exposed to HIV positive blood on November 6, 1998. He further testified that her fear is real and that her perception of the events that transpired is her reality. According to Dr. Lee, this fear interferes with Guess's cognitive functioning and social interaction.

Dr. Michael Gelfand, an infectious disease specialist, testified that Guess had been tested five times for HIV and all five tests were negative. Dr. Gelfand testified that Guess's chance of becoming infected was infinitely small by virtue of the unknown status of the source and the mechanism of claimed contact.

On February 7, 2002, the trial court entered its final order in which it concluded that Guess suffered a vocational disability as a result of the psychological consequences of her injury. Based on this finding, the trial court awarded Guess permanent partial disability of 38% to her mental faculties, a scheduled member injury. See Tenn. Code Ann. § 50-6-207(3)(A)(ii)(ff)(1999).[1]

Appellant Sharp sought review of the judgment, arguing that the evidence preponderated against the finding that Guess suffered a compensable injury. The appellant also raised several evidentiary issues: whether the court erred in allowing into evidence certain documentation purportedly establishing the sexual orientation of the co-worker with whose blood Guess came into contact; whether the court committed reversible error by not allowing the testimony of the appellant's expert Dr. David Schraberg; and whether the court erred in not allowing the appellant's counsel to cross-examine Guess on the issue of the content of her treatment sessions. Appellee Guess submitted one additional argument on appeal - whether the trial court erred in awarding only 38% vocational disability.

Prior to oral arguments before the Special Workers' Compensation Panel, the case was transferred to the entire Supreme Court for review. As noted, the primary issue is what, if any, benefits the appellee is entitled to for alleged mental injuries arising from her exposure to the blood of a co-worker. Before this Court, Appellant argues that because Guess offered no credible proof that she was actually exposed to HIV-contaminated blood, there was no basis for her fear and therefore she did not suffer a compensable injury. Guess argues that her vocational disability award should be increased to 75% or more because of the severity of her limitations resulting from the work-related injury.

We agree with the appellant that absent proof of actual exposure to HIV, the appellee has not suffered a compensable injury under the Workers' Compensation Law. Therefore, for the reasons contained herein, we reverse the judgment of the chancery court.

**STANDARD OF REVIEW**

---

[1] This statutory subsection was deleted by an amendment in 2002, effectively changing the classification of mental injuries from a scheduled member injury to that of an injury to the body as a whole.

The extent of vocational disability is a question of fact to be determined from all of the evidence, including lay and expert testimony. See, e.g., Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 773 (Tenn. 2000); Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999). As such, our review of the trial court's findings in this case is de novo upon the record, "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2)(2002); Stone v. City of McMinnville, 896 S.W.2d 548, 550 (Tenn. 1995).

We are not bound by the trial court's factual findings, but rather examine those findings independently to determine where the preponderance of the evidence lies. Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 (Tenn. 1999) (citing Collins v. Howmet Corp., 970 S.W.2d 941, 943 (Tenn. 1998)). Although deference still must be given to the trial judge when issues of credibility and weight of oral testimony are involved, Cleek, 19 S.W.3d at 774 (citing Seals v. England/Corsair Upholstery Mfg. Co., 984 S.W.2d 912, 915 (Tenn. 1999); Jones v. Hartford Accident & Indem. Co., 811 S.W.2d 516 (Tenn. 1991)), this Court is able to make its own independent assessment of the medical proof when the medical testimony is presented by deposition, id. (citing Landers v. Fireman's Fund Ins. Co., 775 S.W.2d 355, 356 (Tenn. 1989); Henderson v. City of Lawrenceburg, 851 S.W.2d 809, 812 (Tenn. 1993)).

## DISCUSSION

This case presents an issue of first impression in Tennessee: is an employee alleging mental injuries based on perceived exposure to HIV in the work environment entitled to workers' compensation benefits where there is no proof of *actual* exposure to the virus?

Under the statutory scheme governing Tennessee workers' compensation claims, injuries by accident "arising out of and in the scope of employment" are compensable. Tenn. Code Ann. § 50-6-102(12) (2002); Reeser v. Yellow Freight Sys., 938 S.W.2d 690 (Tenn. 1997). The statutory requirements that the injury "arise out of" and occur "in the course of" the employment are not synonymous. See Cunningham v. Shelton Sec. Serv., Inc., 46 S.W.3d 131, 135 (Tenn. 2001) (citing Sandlin v. Gentry, 201 Tenn. 509, 300 S.W.2d 897, 901 (1957)). The phrase "in the course of" refers to time, place and circumstances, and "arising out of" refers to cause or origin. Hill v. Eagle Bend Mfg., Inc., 942 S.W.2d 483, 487 (Tenn. 1997). An accidental injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of employment. Id. (citing Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991)).

We have previously determined that an injury that is purely mental in nature is compensable under the Workers' Compensation Law. See Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 n.10 (Tenn. 1999). In Ivey, we interpreted Tennessee Code Annotated Section 50-6-207(3)(A)(ii)(ff) to cover two types of injuries to one's "mental faculties": (1) mental impairment resulting from physical trauma to the brain; and (2) mental or emotional injuries resulting from non-physical harm or trauma. Id. at 447. In discussing the latter type of injury, we stated that the absence of physical

harm or physical trauma does not lessen the possible effects that such injury can have on both cognitive and vocational abilities.  Id. (citing Gatlin v. City of Knoxville, 822 S.W.2d 587, 591-92 (Tenn. 1991)).

To be compensable, the mental injury must have resulted from an identifiable stressful, work-related event that produced a sudden mental stimulus such as fright, shock, or excessive unexpected anxiety.  Id. at 446 n.10 (citing Gatlin, 822 S.W.2d at 591-92).  On the other hand, "worry, anxiety or emotional stress of a general nature" is not compensable, Goodloe v. State, 36 S.W.3d 62, 65-66 (Tenn. 2001), because the workers' compensation system "does not embrace every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment."  Id. at 66 (quoting Jose v. Equifax, Inc., 556 S.W.2d 82, 84 (Tenn. 1977)).

Appellee Guess argues that Ivey is controlling because, like the claimant in Ivey, she suffered a mental injury as a result of an "identifiable stressful, work-related event," that led to fright, anxiety and shock.  She alleges that her mental injury is exactly the type contemplated in Ivey and that no proof of actual exposure to HIV is necessary.  We do not question the validity of the medical experts' diagnosis of Post Traumatic Stress Disorder stemming out of the incident during which Guess got blood of a co-worker on her hand.  While PTSD can, in some circumstances, be a compensable workers' compensation injury, see Ivey, 3 S.W.3d at 447, the facts of this case are such that Appellee's injury was not one "arising out of" her employment.

While this court has not previously visited the issue of whether a mental injury stemming from the fear of contracting HIV or AIDS is compensable in the context workers' compensation claims,[2] we have addressed this issue in the context of a claim for negligent infliction of emotion distress.  In Carroll v. Sisters of Saint Francis Health Servs., Inc., 868 S.W.2d 585 (Tenn. 1993), the plaintiff sued a hospital to recover damages stemming from her fear of contracting AIDS after pricking her fingers on discarded needles.  There, we held that to recover damages for emotional distress based on the fear of contracting HIV or AIDS, "a plaintiff must prove, at a minimum, that he or she was actually exposed to HIV."  Id. at 594.

In Bain v. Wells, 936 S.W.2d 618 (Tenn. 1997), we again held that in order to maintain a claim for negligent infliction of emotional distress based on exposure to HIV or AIDS, there must be proof of actual exposure.  Bain, a patient at a drug and alcohol rehabilitation center, was placed in the same room with a patient who was HIV positive without being given a warning or obtaining

---

[2] There are two cases in Tennessee decided by the Special Workers' Compensation Appeals Panel that address the issue of mental disability stemming from exposure to HIV-contaminated blood.  These case were adopted by this Court but were not designated for publication.  In Stout v. Johnson City Med. Ctr. Hosp., Inc., No. 03501-9504-00031, 1995 WL 599708 (Tenn. Workers' Comp Panel Oct. 11, 1995), a nurse pricked her finger with a needle that had been inserted into a patient that was known to be HIV positive.  The trial court found that the employee had sustained a vocational disability of 62.5% and awarded benefits accordingly.  The Panel affirmed the decision of the trial court. Similarly, in Thompson v. Vivra Renal Care, Inc., No W2000-03017-WC-R3-CV, 2001 WL 1704243 (Tenn. Workers' Comp. Panel Dec. 11, 2001), the Panel upheld a decision by the trial court to award disability to a nurse who had pricked herself with a contaminated needle.  In neither case did the employee actually contract the virus.

consent. Id. at 620. During that time, the two shared a bathroom, and Bain had an open cut on his buttocks. Id. Additionally, on one occasion, Bain mistakenly used his roommate's disposable razor. Id. We found that the defendant was entitled to summary judgment because Bain failed to offer proof that he had actually been exposed to HIV through one of the accepted means of transmission.[3] Id. at 625-26. In so doing, we explained that in Carroll, we implicitly held that emotional distress injuries are not reasonable, as a matter of law, in a fear-of-contracting-AIDS case unless the plaintiff actually had been exposed to HIV.[4] Id. at 624.

Bain basically stands for the proposition that without proof of actual exposure, the plaintiff failed to show the proximate cause element of negligent infliction of emotional distress. Applying a similar analysis in the context of this workers' compensation claim, we find that without proof of actual exposure, the appellee cannot show that her injury arises out of her employment.

As in Bain, Guess has offered no credible evidence that she was actually exposed to HIV. There is nothing in the record to establish whether the blood in question was even HIV positive. Guess's fears of contamination are based on speculation regarding her co-worker's sexual orientation and her subsequent assumption that he was HIV positive. Aside from this speculation by the plaintiff, there was no evidence that the blood with which she came into contact was infected with the virus.

Appellee Guess asks us to rely solely on Ivey in finding her mental injuries to be compensable. However, Ivey is distinguishable from the case at hand. The plaintiff in Ivey was an employee in a convenience store who was robbed at gunpoint one night. The sudden, identifiable work-related event faced by Ivey was one that put her in real, undeniable danger. Unlike Ivey, the sudden stimulus facing Guess was not one in which she was exposed to any real danger. Because Guess had no proof that her co-worker was in fact HIV positive, there was no rational connection between her injury and employment. This is particularly true considering the fact that no less than five tests were administered and came back negative for the virus.

We are unwilling to accept the appellee's subjective impressions concerning the co-worker's sexual orientation or frail medical condition as proof that his blood was in fact contaminated. To do so would be to further the prejudices and stereotypes surrounding AIDS. In Bain, we specially cautioned against allowing damages based on an unfounded fear of contracting AIDS on public policy grounds. Quoting the Delaware Supreme Court, we stressed the importance of the requirement of actual exposure:

---

[3] Bain lists the specific modes of documented HIV transmission: unprotected sexual intercourse with an HIV-infected person; contact with HIV-infected blood, blood components, or blood products by parenteral mucous membrane or non-intact skin; transplants of HIV-infected organs and/or tissues; transfusions or HIV-infected blood; artificial insemination of HIV-infected semen; and perinatal transmission from mother to child around the time of birth. 936 S.W.2d at 625 n.5.

[4] Proof that the plaintiff actually *contracted* HIV is not necessary to recover emotional distress injuries under Carroll or Bain.

AIDS is a disease that spawns widespread public misperception based upon the dearth of knowledge concerning HIV transmission. Indeed, plaintiffs rely upon the degree of public misconception about AIDS to support their claim that their fear was reasonable. To accept this argument is to contribute to the phobia. Were we to recognize a claim for the fear of contracting AIDS based upon a mere allegation that one *may* have been exposed to HIV, totally unsupported by any medical evidence, or factual proof, we would open a Pandora's Box of "AIDS-phobia" claims by individuals whose ignorance, unreasonable suspicion or general paranoia cause them apprehension over the slightest of contact with HIV-infected individuals or objects. Such plaintiffs would recover for their fear of AIDS, no matter how irrational. We believe the better approach is to assess the reasonableness of a plaintiff's fear of AIDS according to the plaintiff's *actual---not potential---*exposure to HIV.

Bain, 936 S.W.2d at 625 (quoting Brzoska v. Olson, 668 A.2d 1355, 1363 (Del. 1995)).

If a plaintiff were allowed to recover under the facts of the present case, anybody suffering from a mental injury stemming from any perceived or imagined exposure to harmful substances or situations would be entitled to recovery. We find such a result contrary to the original purpose and continued viability of the Tennessee Workers' Compensation Law. As such, we are unwilling to award disability benefits to a claimant who suffers from an irrational fear of exposure to HIV when there is no proof of actual exposure via a medically recognized channel of transmission. Accordingly, we reverse the decision of the trial court in its assignment of 38% permanent partial disability to her mental faculties.[5]

## CONCLUSION

To summarize, after conducting our own de novo review of the record, we hold that a plaintiff seeking workers' compensation benefits for a mental injury due to potential exposure to HIV must demonstrate actual exposure through a medically recognized channel of transmission. The plaintiff, Mary Guess, despite coming in contact with blood from a co-worker, did not, by the preponderance of the evidence, demonstrate actual exposure to the HIV virus through a medically recognized channel of transmission. Accordingly, the chancery court erred in assigning the appellee, Mary Guess, benefits based on a 38% permanent partial disability to her mental faculties.

The judgment of the trial court is reversed, and costs on appeal are taxed to the appellee, Mary Guess.

_____
WILLIAM M. BARKER, JUSTICE

---

[5] Having determined that the appellee's claim for workers' compensation benefits fails as a matter of law, we need not address the other evidentiary issues raised by the parties.

-7-