IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 20, 2004 Session

**SUSAN GREEN v. LEON MOORE, ET AL.**

**Appeal from the Circuit Court for Williamson County**
**No. I-2K393     R. E. Lee Davies, Judge**

---

**No. M2003-01015-COA-RM-CV - Filed August 3, 2004**

---

This appeal pertains to an alleged breach of a settlement agreement arising from a prior dispute between the parties. The plaintiff brought this action to recover damages resulting from an insulting remark allegedly made by an executive of her former employer in violation of a prior settlement agreement that contained a non-disparagement provision. As a result of the alleged breach, the plaintiff claims she was not permitted to serve as Director of Sales for twenty-seven motels, for which she would have received additional compensation, and was precluded from advancing with her new employer. The trial court dismissed plaintiff's claims on summary judgment. Plaintiff appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Pam M. Spicer, Nashville, Tennessee, for the appellant, Susan Green.

Eugene N. Bulso, Jr., Barbara Hawley Smith, and Joseph Gaspar DeGaetano, Nashville, Tennessee, for the appellees, Leon Moore, ShoLodge, Inc., and ShoLodge Franchise Systems, Inc.

**OPINION**

The plaintiff, Susan Green, brought this action seeking compensatory and punitive damages resulting from an insulting remark allegedly made by Leon Moore, President and Chief Executive Officer of ShoLodge, Inc., her former employer. Moore and ShoLodge, Inc., (ShoLodge) are defendants along with a related entity, ShoLodge Franchise Systems, Inc.[1] In the prior dispute, Green alleged employment discrimination against Moore and ShoLodge. That dispute was resolved pursuant to a January 29, 1996 "Settlement Agreement and Release of Claims, Covenant Not to Sue

---

[1]ShoLodge Franchise Systems, Inc. was a defendant in the trial court action and was also granted summary judgment; however, Plaintiff does not appeal the dismissal of her claim against ShoLodge Franchise Systems, Inc.

and Indemnity Agreement" that prohibited the parties, including Moore, from making disparaging remarks about one another. In pertinent part the settlement provided:

> The parties agree that each shall refrain from engaging in any conduct or making any statements, oral or written, which would disparage, harm, or otherwise adversely or negatively impact or affect the reputation or employment prospects of the other, and in the case of ShoLodge, its affiliates, subsidiaries, officers, directors, employees, shareholders or attorneys, regardless of whether any such statements or conduct are in fact true, except to the extent that any such statements are made as required by law pursuant to testimony given under a validly issued subpoena or in a court of law.

After the resolution of the prior dispute, Plaintiff worked as Director of Sales for Prime Hospitality, a management company that operated numerous motels. While working for Prime Hospitality in August 1997, Plaintiff contends that Leon Moore came to the AmeriSuites in Franklin where she was working and called her an expletive.[2] Other Prime Hospitality employees heard the statement. Plaintiff claims that Moore's statement violated the settlement agreement and that it damaged her employment with Prime Hospitality. She further alleges that Moore was acting in the course and scope of his employment with ShoLodge and ShoLodge Franchise Systems, Inc., when this occurred and that the entities are liable along with Moore.

Plaintiff filed the complaint in this action on July 27, 2000. In her complaint, Plaintiff asserted that as a result of Leon Moore's derogatory remarks, she was not allowed to work as Director of Sales for twenty-seven motels that were acquired through "land purchase deals" between Prime Hospitality and ShoLodge. She further asserted that such prevented her from being able to advance with Prime Hospitality.[3]

---

[2] Plaintiff's contends that Mr. Moore called her a "f------ b---- " two times. It is not disputed that Moore made some "remarks." Plaintiff admitted that she was the only one who heard Moore's first remark but when Moore repeated it, at Plaintiff's prompting, other Prime Hospitality workers then heard it. Moore states in his affidavit, "My remarks regarding Ms. Green were made to a business associate . . . not to any of Ms. Green's co-employees. It was Ms. Green who asked me to repeat my remarks in the presence of her co-workers." Moore does not specify what his "remark" was. General Manager Tammi DeJarnette's memorandum indicates that Moore called Plaintiff a "b----."

[3] Initially, Plaintiff asserted claims for loss of reputation, embarrassment, humiliation, lost wages, loss of earning capacity and loss of her ability to advance. The dismissal of these claims was the subject of a prior appeal, *Susan Green v. Leon Moore, et. al.*, No. M2000-030350-COA-R3-CV, 2001 WL 1660828 (Tenn. Ct. App., July 12, 2001) and are not at issue in this appeal.

Defendants filed an answer to the complaint followed by a motion for summary judgment as to all claims.[4] The trial court granted most but not all of Defendants' motion for summary judgment, dismissing Plaintiff's claim that she had "failed to advance her position" and dismissing Plaintiff's claims that she was not allowed to work as Director of Sales on twenty-six (out of a total of twenty-seven) motels. The only claim to survive pertained to one motel in Hendersonville, Tennessee.

Thereafter, Defendants filed three more motions for summary judgment. All three defendants collectively moved to dismiss Plaintiff's only remaining claim, which alleged that Moore's remark prevented her from working on the Hendersonville motel and thus caused her to lose incentive bonuses.[5] SholLodge Franchise Systems, Inc., filed a motion for summary judgment asserting that it was entitled to summary judgment because it was not a party to the settlement agreement. ShoLodge filed a motion for summary judgment alleging that it was entitled to summary judgment because the statements Moore allegedly made were not within the course and scope of his employment. The trial court granted the motions for summary judgment, thereby dismissing all remaining claims.

Summary judgments are proper in almost any civil case that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W. 3d 860, 863 (Tenn. Ct. App. 2001). Summary judgments are not appropriate, however, when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Consequently, a motion for summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support the conclusion that the party seeking the summary judgment, the moving party, is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). Accordingly, we must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997); *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). We must consider the evidence in the light most favorable to the non-moving party, and all inferences must be drawn in that party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196

[4] Defendants' first responsive pleading was a Tenn. R. Civ. P. 12.02 motion to dismiss plaintiff's claims for damage to reputation, mental anguish, humiliation and embarrassment – as being barred by the one year statute of limitations in Tenn. Code Ann. 28-3-104. The trial court dismissed these claims as time barred. That ruling was the subject of the prior appeal and is not presently before the court.

[5] This motion addressed a claim already discussed by the trial court in Defendants' previous motion for summary judgment, namely Plaintiff's claim that she was not allowed to work on a land purchase contract in Hendersonville, Tennessee. However, this second motion for summary judgment was supported by a copy of Prime Hospitality's sales incentive plan, the affidavit of ShoLodge's chief financial officer and excerpts from Plaintiff's deposition. The record does not contain an order dealing with this second motion for summary judgment.

(Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must first investigate whether a factual dispute exists. If we find that a factual dispute exists, we must determine if the fact is material to the claim or defense upon which the summary judgment is based and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214.

The burden is on the moving party to prove that its motion satisfies the requirements of Tenn. R. Civ. P. Rule 56. *Staples*, 15 S .W.3d at 88; *Carvell v. Bottoms*, 900 S.W. 2d 23, 26 (Tenn. 1995). Once the moving party presents a properly supported motion, the burden shifts to the non-moving party to set forth specific facts which must be resolved by the trier of fact. *Staples*, 15 S.W.3d at 88 (citing *Byrd,* 847 S.W2d at 215). The non-moving party may carry its burden by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06.

*McCarley v. West Quality Food Serv*., 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd,* 847 S.W.2d at 215).

Plaintiff claims that she was prevented from advancing in her employment with Prime Hospitality and from working as Director of Sales for twenty-seven motels, thus suffering a loss of income, all as a result of Moore's alleged comment. These claims are refuted by the testimony of Judeith Welch, Director of Associate Relations for Prime Hospitality, and Dan Merrill, former regional Vice President of Sales and Marketing of Prime Hospitality.

Judeith Welch testified that Prime Hospitality did not take any action against Plaintiff due to Moore's remarks. Ms. Welch testified that Moore's remarks did not cause Plaintiff's salary to be reduced, did not cause Plaintiff to be denied a promotion or advancement and did not prevent Plaintiff from working on the twenty-seven land purchase properties.

Dan Merrill testified that twenty-six of the twenty-seven motels at issue were never in Plaintiff's territory. The other motel was in Hendersonville, Tennessee. In two affidavits provided by Mr. Merrill he explained why Plaintiff was not permitted to serve as Director of Sales for the Hendersonville motel. In his January 26, 2001, affidavit Mr. Merrill stated that he told Plaintiff the Hendersonville motel was not being assigned to her because of her relationship with Moore. In his February 2, 2001, affidavit, Mr. Merrill expounded on the first affidavit by stating.

> As I indicated in my original Affidavit . . . I informed Ms. Green that a hotel which Prime Hospitality was to purchase from ShoLodge, Inc. could not be part of her district because of her prior relationship with Leon Moore and ShoLodge, Inc.'s corporate headquarters. I did not add this hotel to Ms. Green's district because I was

concerned that Ms. Green might come into contact with Mr. Moore at that location. I did not have this concern with regard to the 26 other hotels which Prime Hospitality was to acquire from ShoLodge, Inc. I never made any statements to Ms. Green regarding the other 26 hotels which Prime Hospitality was to acquire from ShoLodge, Inc., nor was there any reason to because none of the other 26 hotels were in Ms. Green's area of responsibility. No other such hotels were even in the State of Tennessee.

Ms. Green was a district sales manager, and the next more senior office at Prime Hospitality was that of regional vice president, which is the position I held. Prime Hospitality never considered Ms. Green as a candidate for regional vice president. And in any event, any remarks which Mr. Moore made regarding Ms. Green had no effect whatsoever on Prime Hospitality's decision to promote Ms. Green or not to promote Ms. Green.

. . . .

[B]ecause of Ms. Green's prior relationship with Leon Moore and ShoLodge, I did not add the Hendersonville hotel to her district. This action, however, had no effect on Ms. Green's compensation.

The only evidence in opposition to that presented by Defendants is Plaintiff's affidavit. She states in pertinent part:

Leon Moore and ShoLodge were working on several (at least 27) land purchase deals where Prime was purchasing properties. I was told that I would be unable to work on these properties.

My position at Prime was that of district sales manager. I was manager of sales people who would sell hotel rooms, and where they made their budget, I would realize a monthly income bonus of up to $350.00 per month for each additional property in my district.

At a regional sales meeting in Atlanta in the spring of 2000, Dan Merrill, the regional vice president of sales and marketing, informed me that a certain hotel being purchased by Prime from Leon Moore and ShoLodge could not be part of my sales district because of my relationship with Leon Moore. This additional property would have earned me an additional bonus of up to $350.00 per month, as well as a probable salary increase.

I was also informed and made to specifically understand that I was not to work on any of the hotels that involve Leon Moore in any way. Many of the 27 hotels being purchased by Prime were in the region where I was attempting to become regional sales manager. Despite my familiarity and intimate knowledge of the regional market, I was not promoted to a regional sales manager and being

prohibited from working on several hotels in the region obviously affected by chances of ever becoming a regional sales manager.[6]

It requires only a cursory analysis to realize that much of Plaintiff's affidavit is a compilation of her opinions and conclusory statements as distinguished from facts. Her affidavit is the singular basis upon which Plaintiff attempts to dispute the facts presented by Defendants in their motions for summary judgment. Opposing affidavits must be made on personal knowledge and must present facts that would be admissible in evidence. Tenn. R. Civ. P. 56.05. Moreover, the affiant must show affirmatively that he or she is competent to testify to the matters stated therein. Tenn. R. Civ. P. 56.05; *Price v. Becker*, 812 S.W.2d 597 (Tenn. Ct. App. 1991). Plaintiff's conclusory statements, including her expectations of future promotions, fail to satisfy the evidentiary requirements of Tenn. R. Civ. P. 56.05. As a result, Plaintiff failed to present competent evidence – facts that would be admissible in evidence – to dispute Defendants' statement of undisputed facts as it pertains to her claim that she was prevented from advancing with Prime Hospitality and her claim that she was prevented from serving as Director of Sales for twenty-six of the twenty-seven motels. Accordingly, summary judgment was appropriate as to those claims.

The claim pertaining to the Hendersonville motel requires a different analysis for that was the only motel in Plaintiff's territory. But for Moore's comment, which was how Mr. Merrill learned of the conflict between Moore and Plaintiff, she would have served as Director of Sales for that motel which would have made her eligible to participate in the Sales Incentive Plan. As a result of Moore's comment, Plaintiff was not afforded the opportunity to earn an incentive bonus for working on the Hendersonville motel. However, additional facts establish that Plaintiff was never eligible for such compensation and that such was not the proximate result of Moore's actions. It was the direct result of Plaintiff's decision to voluntarily terminate her employment with Prime Hospitality and the terms of the Sales Incentive Plan at issue.

The Hendersonville motel became part of the Prime Hospitality group on July 9, 2000. Plaintiff voluntarily terminated her employment[7] on August 3, 2000, one week after the commencement of this action. The timing of these two events rendered Plaintiff ineligible to receive additional compensation. This is due to two limiting provisions in the Sales Incentive Plan. First, the plan provides that when a new motel is added, participation in the plan for the new motel begins on the first day of the month of the first full month of operation. That means the Hendersonville motel, which was added on July 9, 2000, would not have been included in the incentive bonus

---

[6]Dan Merrill states in his affidavit that there is no such position as regional sales manager and that the next more senior office to that of Plaintiff's was regional vice president, Merrill's position, for which Plaintiff was not a candidate. Merrill indicates that Plaintiff's failure to be considered for his position had nothing to do with Moore's alleged remarks.

[7]In her deposition, Plaintiff testified:
Q. And you will agree that you left your employment at Prime Hospitality voluntarily; isn't that true?
A. Yes.
Q. No one at Prime Hospitality pushed you or nudged you out the door in any respect; isn't that true?
A. Correct.

program until August 1, 2000. Second, the plan also provides that eligibility and participation in the plan ceases at the time employment terminates, regardless of the reason for termination, that the employee must be employed on the date of payment and that no accrued, prorated portions of an incentive will be paid. Plaintiff resigned on August 3, 2000. Therefore, Plaintiff was not entitled to any compensation under the Sales Incentive Plan for the Hendersonville motel because she was not employed when the payment would have become due, the end of August. Accordingly, summary judgment as to the claim for damages pertaining to the Hendersonville motel was appropriate.

We therefore affirm the trial court on all issues and remand this matter to the trial court. Costs of appeal are assessed against the Appellant, Susan Green.

_____
FRANK G. CLEMENT, JR., JUDGE