**FILED**

**JUNE 1, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 8:58 AM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **JANICE PARKER,** | ) | **Docket No.: 2016-08-0124** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 1900-2016** |
| **REGIONAL ONE HEALTH,** | ) | |
| **Employer,** | ) | **Judge Allen Phillips** |
| **And,** | ) | |
| | ) | |
| **KEY RISK,** | ) | |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on May 16, 2016, upon the Request for Expedited Hearing filed by Janice Parker pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Parker seeks medical and temporary disability benefits for an alleged mental injury. Regional One contends she has failed to establish a legally compensable claim. Accordingly, the central legal issues are whether Ms. Parker has established a compensable mental injury and, if so, whether her injury arose primarily out of her employment at Regional One. If the answer to these questions is in the affirmative, the question turns to the extent of her entitlement to medical and/or temporary disability benefits. For the reasons set forth below, the Court finds Ms. Parker has come forward with sufficient evidence, at this time, to show her injury arose primarily out of her employment and, that she is entitled to the requested benefits.[1]

---

[1] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

1

## History of Claim

Ms. Parker is a fifty-eight-year-old resident of Shelby County, Tennessee who had worked as an orthopedic technician for Regional One, a hospital in Memphis, since 2007. (Ex. 2.) Her job required assisting the medical and nursing staff with various activities in the orthopedics service such as applying and removing casts, splints and traction devices. (Ex. 1.)

On January 4, 2016, Ms. Parker was to assemble the supplies needed to splint a patient. The patient, an inmate from the Shelby County Jail, was in a small casting room where Ms. Parker was to gather the supplies. She recognized him as the same inmate who, several months prior, had performed a lewd act in her presence while he was undergoing treatment.

On January 4, upon entering the casting room, the inmate had looked at Ms. Parker and "rolled his eyes at her." (Ex. 2.) Feeling uncomfortable, Ms. Parker informed the attending physician of the inmate's prior behavior. The physician told Ms. Parker to assemble the necessary supplies and then leave the room.

Before Ms. Parker could assemble the supplies, the inmate became "agitated" and began screaming obscenities at the officer accompanying him. In a written statement given to Regional One on January 4, Ms. Parker stated the inmate "began launching out of the chair" toward the officer. (Ex. 5 at 5.) In Ms. Parker's affidavit, she noted "[the officer] pulled her weapon from its holster and aimed it at the patient." (Ex. 2 at 2.) The inmate was screaming, "shoot, shoot" and words to the effect of "I don't care about you or no one else . . . I have three counts of murder." (Ex. 2 at 2; Ex. 5 at 6.) An attending physician provided a statement to Regional One on January 4, confirming the obscenity-screaming inmate lunging at the officer who pulled her gun. The physician stated the inmate yelled, "shoot me m----f----, I got two murder charges against me." (Ex. 5 at 8.) The physician noted another officer then "re-handcuffed" the inmate. *Id.* A co-worker, Marvelle Tyson, added that when the inmate "jump[ed]" at the first officer, "the other officer moved out of the way." (Ex. 5 at 7.)

In her affidavit, Ms. Parker described being "positioned in front of the gun." (Ex. 2.) At the hearing, the exact positioning of the persons in the room was unclear, including questioning as to whether she was "in the line of fire." Further, Regional One questioned Ms. Parker's confusion as to whether Mr. Tyson was present in the room. Regardless, Ms. Parker described a situation that made exiting the room difficult, if not impossible, because of the locations of the officer and inmate in relation to the door. She "felt trapped" and feared being shot.

After the inmate was subdued, someone (she cannot recall who) helped her from the room. She then remembers being at the hospital for approximately forty-five minutes

to an hour after the event. During that time, she provided a written statement to a Regional One employee charged with the investigation. In that statement, Ms. Parker described the inmate's prior lewd behavior and how she asked the physician for permission not to work with this particular patient on January 4. She then described the inmate "launching" from his chair and the officer pulling her gun. There is no specific mention of she, Ms. Parker, being in front of the gun, or, for that matter, the specific location of any person in the room.

During the melee, a voice on Regional One's public address system called "code white," an announcement indicating work-place violence. Ms. Parker could not recall Regional One announcing another "code white" at any time before January 4, 2016, and she had no training regarding how to respond to such a warning. Likewise, no one trained her how to respond to an incident where someone pulled a gun. During her years of employment at Regional One, she had never been involved in an incident involving a gun or an altercation with an inmate. She had never felt threatened. At the hearing, she testified without hesitation that she had not expected an event involving a gun or one involving an inmate accosting another person. She further testified that she did not expect any of the events of January 4, 2016, specifically being "trapped in a room" where a gun would be pulled on an inmate.

After gathering her belongings, a co-worker "walked" Ms. Parker to her car. She then began driving home but became nauseated and had to stop the car to vomit. Upon arriving at her home, she laid across her bed and began to cry. During her testimony, she described her feeling that day as if "the whole world had flipped over" and the event was "unreal." The Court noted Ms. Parker becoming noticeably upset and tearful when recounting the event.

The next day, January 5, 2016, Ms. Parker called Regional One to advise she was unable to report to work.[2] She then went, on her own, to Dr. Marcus Reeves at Apex Primary Health Care, her primary care provider. She reported to Dr. Reeves a "very traumatic event which occurred at her job yesterday involving a patient who was an inmate." (Ex. 4 at 1.) Specifically, Dr. Reeves recorded that, "[s]he became very nervous and anxious, with palpitations, HA's, and difficulty concentrating. She is still experiencing these symptoms today." *Id.* Dr. Reeves opined Ms. Parker suffered from an "anxiety disorder, unspecified" and noted: "She's been doing [sic] with anxiety issues for quite some time and this last event may have pushed her 'over the edge'. At this point, I believe the patient needs specialty psychiatric assistance. We will attempt to assist the

---

[2] Though no medical records are in evidence to document the visit, Ms. Parker testified she saw an Employee Assistance Provider at Regional One. The date of such visit is unknown. She also testified that Regional One provided her a panel of physicians from which she chose Concentra. According to her testimony, the provider at Concentra advised Ms. Parker that, "they could not help her." As discussed hereafter, Regional One denied her claim at some point after the Concentra visit. The Court notes Ms. Parker's history of seeing EAP and Concentra but finds these visits have no bearing on the result herein.

patient with arranging psychiatric assistance." *Id.* at 2. At this visit, as with the visits which followed, Ms. Parker paid a thirty dollar co-payment.

Ms. Parker returned on January 25, 2016, and Dr. Reeves noted no improvement with "the symptoms of agitation, nervousness, and decreased concentration." *Id.* at 4. Dr. Reeves diagnosed a "panic disorder [episodic paroxysmal anxiety] without agoraphobia." *Id.* at 7. Dr. Reeves stated that he "can only strongly recommend that she see a psychiatrist." He made a psychiatric referral to Dr. Robert Buchalter. *Id.*

On March 3, 2016, Ms. Parker returned and reported having seen "a psychiatrist" who diagnosed PTSD. Dr. Reeves added PTSD to his assessment of Ms. Parker and "encouraged [her] to make sure that she keeps her appointments for the therapy." *Id.* at 9.

Ms. Parker did not see a psychiatrist as she reported but instead saw Diana Baker, a nurse practitioner affiliated with Dr. Buchalter. The only records of Ms. Baker in evidence are from a visit of March 14, 2016. Ms. Parker related that she had witnessed an inmate "masturbating as she attempted to splint [his] hand." (Ex. 4 at 15.) She then related that a "security guard threatened [the] inmate [with a] gun." She told Ms. Baker she "feared for her life" and that "I cannot get past it." She claimed that "EAP at Regional One" told her she had "job stress." *Id.* After evaluating Ms. Parker, Ms. Baker recorded, on a handwritten note, that: "Pt seen in this office for management of PTSD & anxiety & depression." (Ex. 4 at 11.) Ms. Baker further noted, "Pt being medicated" and that Ms. Parker was to return in "one month." *Id.*

Due to insurance coverage issues, Ms. Parker was compelled to find another provider. On May 2, 2016, she saw Dr. Matthew Smith at Germantown Psychological Associates upon referral from Ms. Baker. Dr. Smith opined that, "hers seems to be a well-defined case of PTSD stemming from an incident at work that she perceived as life-threatening." (Ex. 4 at 14.)

Ms. Parker testified she continues to experience symptoms of anxiety and stress because of the incident. She cannot focus and she has "become increasingly nervous and depressed." (Ex. 2 at 3.) She is uncharacteristically disorganized. As of the date of the hearing, she remains on medication and feels unable to return to work.

Regional One did not dispute the occurrence of the event. However, it contended the event was not "unexpected." Inmates and guards are routinely present at the hospital. The guards carry guns. Further, in this instance, Ms. Parker was aware of the history of the particular inmate and his actions on January 4, 2016, were something that she should have anticipated. Because Ms. Parker should not have perceived the event as unexpected, Regional One contends Ms. Parker's alleged injury is not compensable.

In support of its position, Regional One offered the testimony of Ms. Sharon

4

Story, an occupational nurse at Regional One who is responsible for handling workers' compensation claims. In this case, she was custodian of the employee statements taken on January 4, 2016, that were introduced into evidence. She also testified she first spoke with Ms. Parker on January 8, 2016, when Ms. Parker advised she was off work because of the accident per her doctor's orders. Ms. Story provided a panel of physicians from which Ms. Parker chose Concentra. Thereafter, Regional One's carrier denied Ms. Parker's claim.

Ms. Story was aware of armed guards at Regional One on a daily basis. She also was aware of incidents involving confrontations at the hospital between patients, and other parties such as family members, during her time at the hospital. Though she is aware of workplace violence training, she is unaware specifically if and when Ms. Parker received such training. She responded to extensive questioning on direct and cross-examination regarding Ms. Parker's statements regarding whether she was in the "line of fire" of the officer's weapon. She also related having been personally involved in a robbery situation but conceded she was not near the actual perpetrators.

In Ms. Parker's PBD, she requested medical benefits.[3] At the hearing, Ms. Parker requested medical evaluation and treatment of her mental injury, payment of outstanding medical bills, and temporary disability benefits from January 4, 2016, and ongoing. The DCN listed as "Defenses": "Legal causation, compensability, there is no requirement in the law to provide a panel for an event that does not rise to the level of a compensable workers' compensation claim."

**Findings of Fact and Conclusions of Law**

*Standard applied*

At an Expedited Hearing, Ms. Parker need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015). In analyzing whether she has met her burden, the Court will not remedially or liberally construe the law in her favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Ms. Parker nor Regional One. *See* Tenn. Code Ann. § 50-6-116 (2015).

---

[3] The PBD on file is a poor copy, which causes difficulty in determining whether Ms. Parker checked "lost wage benefits." Ms. Parker announced at the hearing that she sought temporary benefits, and the case proceeded accordingly.

*Compensability*

Ms. Parker claims a mental injury. At the outset, this Court notes what our Supreme Court has called a "difficulty in pinpointing the exact cause of many mental injuries." *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 754 (Tenn. 2001).[4] "Tennessee courts have long struggled to define precisely when a mental injury will be deemed an injury by accident arising out of the employment. In so doing, they have endeavored to strike a balance between compensating employees for their injuries and ensuring that employers are not obligated to bear the costs of spurious claims or claims whose true origins lie outside the workplace." *Id.*

In many respects, Ms. Parker's case epitomizes this difficulty. She earnestly claims the event of January 4, 2016, caused her to feel as if her world was "flipped over." Regional One counters it should not be held responsible for her mental issues allegedly resulting from an event neither unexpected nor beyond the pale of reasonable occurrences in its workplace. After careful review of the evidence, the Court finds Ms. Parker's position more in line with Tennessee law and that she has come forward with sufficient evidence for the Court to determine she is likely to prevail at a hearing on the merits when considering the applicable definition of injury.

Tennessee law allows compensation for mental injuries if they are caused by either 1) a compensable physical injury, or 2) a sudden or unusual mental stimulus, such as fright, shock, or even excessive, unexpected anxiety. *Cutler*, 54 S.W.3d at 754, *citing Jose v. Equifax*, 556 S.W.2d 82, 84 (Tenn. 1977). Ms. Parker did not sustain a physical injury; hence, the Court looks to whether the event of January 4, 2016, meets the second set of criteria. The Court finds Ms. Parker experienced the requisite mental stimuli to establish compensability. Ms. Parker testified the inmate suddenly sprang from his chair and lunged at the officer. The officer drew her gun while the inmate screamed obscenities and moved in a threatening motion. These basic facts are uncontroverted, supported not only by Ms. Parker, but also by other Regional One employees. The Court finds Ms. Parker was startled, frightened and shocked by the inmate's actions. Her tearful recounting of the event was both credible and convincing. The Court believes her anxiety and stress prompted by the event was real both on the date of the occurrence and now.

In *Gatlin v. Knoxville*, 822 S.W.2d 587, 592 (Tenn. 1991), our Supreme Court deemed the employee's mental injury non-compensable because he could not point to

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

"any acute and unexpected mental stimulus." *Id.* at 589. That employee argued exposure to "special stress" simply from the fact that the work of an undercover police officer exposed him to a level of stress different from that experienced by officers in less dangerous work. *Id.* The Supreme Court found under the facts in *Gatlin* the lack of "an identifiable stressful event" prevented recovery.

Here, this Court finds the stress of January 4, 2016, was not what Ms. Parker would ordinarily experience in an orthopedic technician's job duties. Contrary to Regional One's assertions, the event of January 4, 2016, was not an expected occurrence in the context of an orthopedic technician's job description. Even though the hospital had long-treated inmates, an employee in the position of Ms. Parker would not reasonably expect, as part of her normal work activities, to face confinement in a small room with a dangerous inmate and an officer forced to draw her gun. The inmate's previous lewd behavior does not create an expectation on her part of possible violence. She bolsters the unexpectedness of the event by testifying that she neither experienced nor knew of prior violent events at her workstation.

Ms. Parker argues *Craven v. Corrections Corp. of America*, No. W2005-01537-SC-WCM-CV, 2006 Tenn. LEXIS 972 (Tenn. Workers' Comp. Panel Oct. 26, 2006), supports her position. The Court agrees. There, the employee witnessed a violent attack on a close co-worker. The Panel found that injury compensable because it was a sudden and unexpected mental stimulus that produced unusual and extraordinary anxiety. *Id.* at *19. Those facts comport with the facts in the instant case, even though the event in *Craven* might have been more severe. It is not a question of degree, but rather a question of whether the event produces sudden, unexpected, and unusual stress, shock, or fright. Regional One concedes that "acute, sudden, and unexpected emotional stress" producing a mental injury is compensable, but it disputes Ms. Parker encountered such stress. Again, the Court disagrees and finds the evidence, taken in its totality, supports a finding that the event of January 4, 2016, was of the sudden and unexpected variety compensable under Tennessee law.

Regional One also argued against compensability because Ms. Parker was not specifically "in the line of fire" of the officer's gun. The Court is not impressed with this argument. Being in a small room with an unrestrained inmate charged with murder whose threatening conduct requires an officer to draw her weapon is sufficiently stressful without Ms. Parker actually being in front of the weapon. While having a gun pointed directly at her may have increased the degree of stress, it is not a required element for a compensable event. This argument is akin to finding the event in *Craven* was more severe and therefore compensable while the instant facts do not support compensability. Again, the severity of the stimuli alone is not controlling; instead, the standard is whether the stimulus is sudden and unusual and produces uncharacteristic fright, shock, or anxiety.

7

At this stage of the case, Ms. Parker is not required to establish through expert medical proof that her injury arose primarily out of the employment. She is, as stated previously, required to come forward with sufficient evidence from which the Court might find she is likely to prevail at a hearing on the merits. The Court so finds.

*Medical benefits*

Having found sufficient proof of compensability at this stage of the case, the Court turns to medical causation. Ms. Parker must show, "to a reasonable degree of medical certainty that [her alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015). As with compensability, Ms. Parker need not prove these elements of medical causation by a preponderance of the evidence. Instead, she must "present evidence sufficient for [this Court] to conclude [she] would likely prevail at a hearing on the merits." *McCord*, at *5.

In *McCord*, our Appeals Board explained the logic of relaxing the preponderance of evidence standard at Expedited Hearings. Namely, requiring Ms. Parker to prove the "arising primarily out of" requirements by a preponderance of the evidence at this Expedited Hearing, "would require [her] to seek out, obtain, and pay for a medical evaluation or treatment before [Regional One] would have any obligation to provide medical benefits." *McCord*, at *5. "The delays inherent in such an approach, not to mention the cost barrier . . . would be inconsistent with a fair, expeditious, and efficient workers' compensation system." *Id.* Conversely, our Appeals Board also recognized that "mere notice of an alleged workplace accident, in and of itself, does not trigger an employer's duty to provide medical benefits . . . without regard to the particular circumstances presented." *Id.* at *7. Rather, the "statute and rules contemplate that an employer has an initial period of time following receipt of notice of a work accident . . . within which it must investigate a claim and make a preliminary decision on compensability." Each case "is different and should be evaluated on its own merits." *Id.* at *6.

Applying these standards to the instant case, Regional One was within its rights to deny medical benefits based upon its assertion that the injury is not compensable. This denial required Ms. Parker to come forward with sufficient evidence for this Court to determine she might prove a compensable injury at a full hearing. The Court determines she has done so. On January 5, 2016, the day following the incident, Ms. Parker saw Dr. Reeves, a medical doctor, who diagnosed anxiety and recommended she seek psychiatric evaluation. Dr. Reeves specifically noted the event "may have pushed her 'over the edge.'" (Ex 4 at 2.) The Court finds these statements sufficient to establish Ms. Parker

8

would likely prevail at a hearing on the merits regarding medical causation.

The Court is mindful that Ms. Baker and Dr. Smith, the two psychologists who treated her, are not medical doctors and, accordingly, cannot opine as to causation. *See Selby v. Highways, Inc.*, No. M2002-00340-WC-R3-CV, 2003 Tenn. LEXIS 413, at \*12 (Tenn. Workers' Comp. Panel May 15, 2003) (a court cannot base a finding of causation solely upon the opinion of a psychologist). However, as noted, Dr. Reeves is a medical doctor and sufficiently opined, under the relaxed burden at this Expedited Hearing, that a causal relation existed between the event of January 4, 2016, and Ms. Parker's condition. *See* Ex. 4 at 2. Likewise, Ms. Baker did diagnose PTSD in her initial evaluation of February 29, 2016, (Ex. 4 at 2), and Dr. Smith stated she had "a well-defined case of PTSD." (Ex. 4 at 14.) These evaluations note findings consistent with Ms. Parker's affidavit and hearing testimony and are entirely consistent with Dr. Reeves' recommendation that Ms. Parker receive psychiatric evaluation.

Likewise, the Court is mindful that the evidence indicates Ms. Parker suffered from anxiety prior to January 4, 2016. *See* Ex. 4 at 2. However, this prior history does not insulate Regional One from responsibility for Ms. Parker's mental injury. An employer takes an employee with all preexisting conditions and cannot escape liability when the employee, upon suffering a work-related injury, incurs a disability far greater than if she had not had a preexisting condition. *Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. 1996). This principle holds true in mental injury cases. In *Craven*, the evidence indicated the employee had "experienced a number of stressful life experiences." *Craven*, at \*20. However, the attack on his co-worker served as the stimulus for his mental injury. *Id.* The facts of this case are analogous.

Authority from our Appeals Board confirms the long-standing principle of aggravation of pre-existing conditions. In *Miller v. Lowe's Home Ctrs., Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp App Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015), the Board found that:

> [T]o qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a preexisting condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2015). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller*, at \*18.

Here, Dr. Reeves specifically noted the event in question "may have pushed her 'over the edge.'" (Ex. 4 at 2.) Ms. Parker now needs "psychiatric assistance" when there is no evidence that she needed that assistance before January 4, 2016. Accordingly, the Court finds Ms. Parker has shown a likelihood of prevailing on the merits regarding her claim for medical benefits. Regional One shall provide a panel of physicians to evaluate and treat her mental injury and shall be responsible for medical expenses to date. Based upon the evidence, those expenses are three thirty dollar co-payments made by Ms. Parker.

*Temporary disability benefits*

Under Tennessee law, to establish entitlement to temporary total benefits, Ms. Parker must show she "was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and her inability to work; and (3) the duration of that period of disability." *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at \*7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). TTD benefits terminate when Ms. Parker demonstrates the ability to return to work or attains maximum medical improvement. *Id.*

In this case, the only medical expert evidence of Ms. Parker being taken off work due to her mental injury appears in the records of Dr. Reeves. Again, he is the only medical doctor whose opinions are in evidence and the only provider upon whose opinion Ms. Parker might rely for proof of her inability to work. *See Selby, supra.* When looking to his opinions, Dr. Reeves first opined Ms. Parker was unable to work from January 5, 2016, until January 11, 2016. (Ex. 4 at 17.) On January 11, 2016, he again took her off work until "after her specialist evaluation." (Ex. 4 at 18.) On January 25, 2016, he opined she was "unable to return to work until further evaluation has been completed." (Ex. 4 at 19.) Because Ms. Parker is yet to complete her evaluation, the Court finds these statements of Dr. Reeves show a total disability to work because of a compensable injury and the duration of that period of disability. Having already found adequate proof of a causal relationship between the January 4, 2016 event and the injury, the Court finds Ms. Parker has shown a likelihood of prevailing at a hearing on the merits regarding the claimed temporary total disability benefits from January 4, 2016, forward.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Parker shall receive medical benefits from Regional One for evaluation and treatment of her alleged psychological injury of January 4, 2016. Regional One shall provide a panel of psychiatrists to evaluate Ms. Parker and determine reasonable and necessary medical treatment for her alleged mental injury of

January 4, 2016.

2. Ms. Parker is entitled to temporary total disability benefits for the period of January 4, 2016, to May 16, 2016, a period of nineteen weeks, and ongoing until a physician releases her to return to work or places her at MMI. At this time, the parties have not agreed to the proper weekly compensation rate. If they are unable to agree, they may submit the issue to the Court for determination.

3. This matter is set for an Initial (Status) Hearing on July 20, 2016, at 10:00 a.m. Central time.

**ENTERED this the 1st day of June, 2016.**

_____

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

11

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits</u>:
1. Ms. Parker's Job Description;
2. Ms. Parker's Affidavit;
3. Ms. Parker's Statement given to Regional One;
4. Medical Records, billing and off-work statements of Diane Baker, FNP; Matthew Smith, PhD. and Apex Primary Health (Dr. Reeves); and
5. Affidavit of Sharon Story (with attached witness statements).


<u>Technical record</u>:
1. Petition for Benefit Determination, filed on February 2, 2016;
2. Dispute Certification Notice, filed on March 8, 2016;
3. Request for Expedited Hearing, filed on April 4, 2016; and
4. Regional One's Witness and Exhibit List.[5]

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 1st day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Linda K. Garner, Esq. Employee's Counsel | | | X | Lgarner4@comcast.net |
| Michael W. Jones, Esq. Employer's Counsel | | | X | mjones@wimberlylawson.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**