<span style="color:red">**FILED**
**Jan 17, 2019**
**03:33 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**</span>



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **MATTHEW RYAN CREASMAN,** | ) | **Docket No. 2018-03-0615** |
| **Employee,** | ) | |
| **v.** | ) | |
| **USF HOLLAND, INC.,** | ) | **State File No. 27711-2018** |
| **Employer,** | ) | |
| **And** | ) | |
| **OLD REPUBLIC INSURANCE** | ) | **Judge Pamela B. Johnson** |
| **COMPANY,** | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This matter came before the Court for an Expedited Hearing on December 19, 2018. The central issues are whether Matthew Ryan Creasman demonstrated he is likely to prevail at a hearing on the merits that his mental injury arose primarily out of and in the course and scope of his employment with USF Holland, Inc., and, if so, whether he is entitled to medical and temporary disability benefits. For the reasons below, the Court holds Mr. Creasman failed to demonstrate that he is likely to prevail at a hearing on the merits and denies his claim at this time.

### History of Claim

Mr. Creasman worked in the truck yard for USF Holland. Two incidents occurred at USF Holland involving Mr. Creasman and his co-worker and union steward, James Gasche. The parties dispute the nature of the incidents and whether Mr. Creasman suffered a mental injury following one or both of the incidents.

The first incident occurred on December 11, 2017. During an argument over the smoking area location, Mr. Creasman felt threatened when Mr. Gasche said, "Let's go across the street and settle it." Mr. Creasman acknowledged that both he and Mr. Gasche remained seated during the argument, but Mr. Gasche shook his finger at him without touching him.

1

Mr. Gasche offered a different version of the incident. He stated he met with Mr. Creasman in December 2017 to discuss the smoking area relocation. He acknowledged that Mr. Creasman disagreed with the decision and did not want to abide by it. Mr. Gasche informed Mr. Creasman that the location of the smoking area was not a battle that he could win, as the decision was final. At that point, Mr. Creasman stood up and accused Mr. Gasche of threatening him.

Another co-worker, Leonard Poole, witnessed the December incident. He agreed that Mr. Creasman was upset that the smoking area had moved and indicated Mr. Gasche approached Mr. Creasman to discuss the decision. Mr. Poole stated that, because Mr. Creasman remained upset, Mr. Gasche offered to continue the conversation in private, at which point Mr. Creasman claimed that Mr. Gasche threatened him.

Immediately following the December incident, Mr. Creasman reported the incident to the terminal manager, Roger Bible. Mr. Bible placed Mr. Gasche on leave pending an investigation. Following the investigation, Mr. Bible determined that Mr. Gasche had not acted in an aggressive, threatening, or improper way. Mr. Bible recalled Mr. Gasche to work with no disciplinary action taken and paid Mr. Gasche for his time off. Mr. Bible required Mr. Creasman and Mr. Gasche to avoid speaking to each other and to review and sign USF Holland's harassment policy.

Several days later, Mr. Creasman reported the incident to the police. The police came to USF Holland, took Mr. Creasman's statement, and prepared a police report. The police neither contacted nor interviewed Mr. Gasche.

After the December incident, Mr. Creasman alleged that he became fearful for his safety and began suffering from nervousness and anxiety. However, he did not seek treatment following the incident and he did not miss any work.

The second event occurred on April 5, 2018. Mr. Creasman, whose responsibilities included moving trailers around the yard, alleged Mr. Gasche improperly parked his trailer. He reported Mr. Gasche's parking infraction to his supervisor, Michael Johnson. When Mr. Gasche learned that Mr. Creasman reported him, Mr. Gasche began yelling, making aggressive movements (pointing at him and "flipping [him] a bird"), and came after Mr. Creasman, who was operating a yard truck. As Mr. Gasche approached, Mr. Creasman put the yard truck in reverse in an attempt to flee. Using the radio, he called for help and heard his supervisors respond and call off Mr. Gasche, who turned and left.

Mr. Creasman asserted he was afraid after the April incident, but he admitted that he did not hear what Mr. Gasche was yelling over the noise of the yard truck. He also admitted that Mr. Gasche did not make physical contact with him and stated there was no way that Mr. Gasche could catch him in the yard truck.

2

For his part, Mr. Gasche said he had returned from a delivery and parked his tractor in the yard. A co-worker informed him that Mr. Johnson wanted to see him. When Mr. Gasche spoke with Mr. Johnson, he learned that Mr. Creasman complained that Mr. Gasche was "instigating" other drivers to improperly park their trailers in the yard, causing Mr. Creasman more work. Mr. Gasche told Mr. Johnson that he parked his trailer in the same manner as the two drivers who arrived in the yard before him. Mr. Gasche indicated that Mr. Johnson agreed that he properly parked his trailer.

As he left the dock, Mr. Gasche saw Mr. Creasman in the yard and decided to speak with him in an attempt to clear the air. As he walked toward Mr. Creasman, Mr. Creasman smiled at him and "flipped [him] the bird." Mr. Creasman then stated twice into the radio that Mr. Gasche was threatening him and backed the yard truck away. Mr. Gasche denied that he threatened or yelled at Mr. Gasche or that he used profanity or made obscene gestures.

Several co-workers witnessed the April incident. Barry Hayes confirmed Mr. Gasche's version of the incident. Another supervisor, Michael Woods, stated that he heard Mr. Creasman yell over the radio, and immediately went outside, but he "did not find any evidence to support Mr. Creasman's assertions that Mr. Gasche was either aggressive or threatening or abusive towards Mr. Creasman or any other employee." Mr. Bible conducted an investigation after learning of the incident and testified, "[He] could not conclude that Mr. Gasche's conduct was inappropriate, much less threatening."

After the April incident, Mr. Creasman immediately called 9-1-1. Again, the police responded, took Mr. Creasman's statement, and prepared a report without contacting or interviewing Mr. Gasche. After the police left, Mr. Creasman told Mr. Johnson that he could not finish his shift and left. He has not worked since that date.

Days later, Mr. Creasman notified USF Holland of his need for medical care and advised that he initiated treatment with Dr. Jose Malagon on April 10. Dr. Malagon determined that Mr. Creasman suffered from "PTSD, anxiety, and major depression from a work-related incident at his employer USF Holland." Dr. Malagon took Mr. Creasman off work and recommended he see a psychiatrist or psychologist.

Based on Dr. Malagon's recommendation, Mr. Creasman began treatment with a psychiatrist, Dr. C. Randall May. Dr. May responded to a questionnaire submitted by Mr. Creasman's former attorney. He marked "yes" when asked whether the December 2017 incident and April 2018 incidents contributed more than fifty percent in causing Mr. Creasman's mental injuries. He also placed Mr. Creasman off work through January 21, 2019.[1]

---

[1] The November 6, 2018 off-work note stated, "To remain off work till 1/21/18." The Court presumes Dr. May intended to write "1/21/19."

USF Holland sent Mr. Creasman to a neuropsychologist, Malcom Spica, PhD., for an independent neuropsychological examination. Dr. Spica interviewed Mr. Creasman and his wife, reviewed records from Drs. Malagon and May, and conducted various tests. Testing of mood symptoms resulted in findings consistent with symptom magnification. Additionally, Dr. Spica determined it was not credible that Mr. Creasman believed his coworker was going to cause him serious injury or death. Mr. Creasman admitted to Dr. Spica that he did not hear the coworker threaten him, that the coworker did not have a weapon, and that he and the coworker were not alone on the worksite. Dr. Spica also found it was not credible that the coworker's actions or "angry look on his face" triggered PTSD. Instead of a PTSD diagnosis, Dr. Spica concluded Mr. Creasman presented with an adjustment disorder with mixed anxiety and depressed mood.

Mr. Creasman also saw a psychiatrist, Dr. J. Sidney Alexander, for an independent psychiatric evaluation at USF Holland's request. Dr. Alexander conducted interviews similar to Dr. Spica, reviewed Mr. Creasman's medical records and Dr. Spica's report, and conducted various testing. Dr. Alexander noted, "Mr. Creasman, both with Dr. Spica's testing and with mine, showed extreme signs of exaggeration and malingering." Dr. Alexander indicated that Mr. Creasman's history was inconsistent with PTSD, or a true psychiatric disorder, caused by the work incidents. Dr. Alexander concluded, "My opinion, within a reasonable degree of medical certainty, is that Mr. Creasman does not have a psychiatric diagnosis, disorder, or any temporary or permanent impairment related to his Workers' Compensation injury claims." Dr. Alexander diagnosed malingering. Additionally, Dr. Alexander noted that Dr. May relied on Mr. Creasman's subjective history and complaints to make his opinion without using objective testing to form his opinions.

During the hearing, Mr. Creasman acknowledged that it was not unusual for dockworkers to curse while working or to witness loud disputes between supervisors and employees.

### Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Creasman must present sufficient evidence demonstrating that he is likely to prevail at a hearing on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

In this case, Mr. Creasman seeks to recover benefits for an alleged mental injury. The Tennessee Workers' Compensation Law defines a mental injury as "a loss of mental faculties or a mental or behavioral disorder, arising primarily out of a compensable physical injury or an identifiable work related event resulting in a sudden or unusual stimulus[.]" Tenn. Code Ann. § 50-6-102(17) (2018).

4

However, the workers' compensation system "does not embrace every stress or strain of daily living or every undesirable experience encountered in the duties of a contract of employment." *Guess v. Sharp Mfg. Co. of Am.*, 114 S.W.3d 480, 485 (Tenn. 2003). Therefore, Tennessee courts apply a two-part test in order to determine whether an injury caused by mental or emotional stimulus is compensable. First, the injury must stem from "an identifiable stressful, work-related event producing a sudden mental stimulus such as fright, shock, or excessive unexpected anxiety." Second, "the event must be extraordinary in comparison to the stress ordinarily experienced by an employee in the same type of duty." *Ireton v. Horizon Mental Health Mgmt., LLC,* No. E2015-00296-SC-R3-WC, 2016 Tenn. LEXIS 3 at *28 (Tenn. Workers' Comp. Panel Jan. 19, 2016).

Here, Mr. Creasman claimed his mental injuries arose primarily out of the April incident or from a combination of the December and April incidents. In both incidents, he alleged Mr. Gasche threatened him by yelling, gesturing, and using profanity, which caused him to suffer PTSD, anxiety, and major depression. However, Mr. Gasche denied he threatened Mr. Creasman and the witnesses and subsequent investigations failed to substantiate Mr. Creasman's claims. Moreover, Mr. Creasman admitted that Mr. Gasche never physically struck him and that he did not hear what Mr. Gasche said during the April incident. Therefore, the Court holds Mr. Creasman failed to come forward with sufficient evidence that he suffered "an identifiable stressful, work-related event."

Even assuming Mr. Gasche yelled and used profanity toward Mr. Creasman as he claimed, his proof failed to show that the event was extraordinary. Mr. Creasman admitted that it was not unusual to hear dockworkers using curse words while working or to observe supervisors and co-workers yelling during an intense argument. As such, the Court holds that Mr. Creasman failed to sufficiently demonstrate that "the event [was] extraordinary in comparison to the stress ordinarily experienced by an employee in the same type of duty."

Finally, even if the proof was sufficient to establish that Mr. Creasman suffered an extraordinary stressful, work-related event, the Court cannot find that the event produced a "sudden mental stimulus such as fright, show, or excessive unexpected anxiety." Under the Workers' Compensation Law, a compensable mental injury arises out of and occurs in the course and scope of employment only if it has been shown to a reasonable degree of medical certainty that the employment contributed more than fifty percent in causing the need for medical treatment, considering all causes. *See* Tenn. Code Ann. § 50-6-102(14)(B).

On the issue of causation, the parties presented the Court with conflicting opinions. Dr. Malagon determined that Mr. Creasman suffered from "PTSD, anxiety, and major depression from a work-related incident at his employer USF Holland" and

5

referred him to a psychiatrist or psychologist. Mr. Creasman's psychiatrist, Dr. May marked "yes" when asked whether the December 2017 incident and April 2018 incidents contributed more than fifty percent in causing Mr. Creasman's mental injuries. However, there is no evidence that Dr. Malagon or Dr. May conducted any testing or considered anything other than Mr. Creasman's subjective complaints.

In contrast, Dr. Spica and Dr. Alexander conducted objective testing, reviewed medical records and eyewitness accounts, and interviewed Mr. Creasman and his wife. Dr. Spica determined it was not credible that Mr. Creasman believed his coworker was going to cause him serious injury or death. Dr. Spica also found it was not credible that the coworker's actions or "angry look on his face" triggered PTSD. Dr. Alexander indicated that Mr. Creasman's history was inconsistent with PTSD, or a true psychiatric disorder, caused by the work incidents. Dr. Alexander concluded that Mr. Creasman did not have a psychiatric diagnosis related to his alleged work-related claims but was malingering.

When the parties present conflicting medical testimony, the Court may choose which view to believe. *See Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). In doing so, the Court may consider the experts' qualifications, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

These factors overwhelmingly favor the opinions of Dr. Alexander and Dr. Spica over those of Dr. May. Dr. Alexander considered Mr. Creasman's subjective complaints as well as objective test results. Dr. Alexander reviewed eyewitness accounts and the medical records, while Dr. May relied solely on Mr. Creasman's statements in reaching his conclusion. For these reasons, the Court finds Dr. Alexander's opinion more persuasive. Therefore, the Court holds Mr. Creasman failed to sufficiently demonstrate that the alleged events and his employment contributed more than fifty percent in causing the need for medical treatment, considering all causes.

**IT IS, THEREFORE, ORDERED** that Mr. Creasman's claim against USF Holland, Inc. and its workers' compensation carrier for the requested benefits is denied at this time.

This matter is set for a Status Conference on **April 11, 2019**, at **9:30 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 (toll-free) to participate in the Status Conference. Failure to appear by telephone may result in a determination of the issues without the party's participation.

**ENTERED January 17, 2019.**

**PAMELA B. JOHNSON, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

The Court identified the following as the Technical Record:

1. Petition for Benefit Determination (Doc. Id. 6783)
2. Employee Correspondence – Medical Records (Doc. Id. 6782)
3. Employer Correspondence – Employment Record (Doc. Id. 6781)
4. Dispute Certification Notice (Doc. Id. 6780)
5. Request for Expedited Hearing (Doc. Id. 8004)
6. Docketing Notice for on the Record Determination (Doc. Id. 8658)
7. Motion for Additional Time (Doc. Id. 8872)
8. Employer's Position Statement/Brief (Doc. Id. 9269)
9. Employer's Rule 60.02 Motion for Relief from the Docketing (Doc. Id. 9268)
10. Objection to Request for Issuance of Decision on the Record (Doc. Id. 9266)
11. Agreed Order Extending Time for Filing Objection and Submitting Position Statements (Doc. Id. 9193)
12. Employee's Response to Employer's Rule 60.02 Motion for Relief and his Objection to the Filing of the Affidavits of James Gasche, Roger Bible, Barry Hayes, Leonard Poole, Jeff Roberts, and Dr. Martin Spica (Doc. Ids. 9968, 9967)
13. Objection to Introduction into Evidence of Two Photographs submitted as Employee's Collective Exhibit 2 (Doc. Id. 9339)
14. Objection to Introduction into Evidence of Knox County Sheriff's Office Reports of December 11, 2017 and April 5, 2018 (Doc. Id. 9338)
15. Objection to Admittance into Evidence Correspondence from Employee's Counsel, Roger Gilbert (Doc. Id. 9337)
16. Objection to Medical Records of C. Randall May, M.D. (Doc. Id. 9336)
17. Objection to Introduction into Evidence the Reports of the Clinton Family Physicians (Doc. Id. 9335)
18. Employee's Response to Employers' Rule 60.02 Motion for Relief from the Court's Docketing Notice for On-The-Record Determination Order and His Objection to the Filing of the Affidavits of James Gasche, Roger Bible, Barry Hayes, Leonard Poole, Jeff Roberts, and Dr. Martin Spica (Doc. Id. 9330)
19. Employee's Position Statement (Doc. Id. 9312)
20. Docketing Notice – Status Conference (Doc. Id. 9393)

7

21. Employee's Response to Employer's Objections to Use or Introduction into Evidence Certain Items submitted by Employee (Doc. Id. 9462)
22. Employee's Response to Employer's Objection for Issuance of Decision on the Record and his Objection to the Filing of the Affidavits of James Gasche, Roger Bible, Barry Hayes, Leonard Poole, Jeff Roberts, and Dr. Martin Spica (Doc. Id. 9452)
23. Employer's Reply to Employee's Response to Employer's Objection to use or Introduction into Evidence Certain Items submitted by Employee (Doc. Id. 9494)
24. Order Granting Rule 60.02 Motion for Relief from Docketing Notice, Placing Evidentiary Objections in Abeyance, and Setting In Person Expedited Hearing (Doc. Id. 9610)
25. Docket Notice – Expedited Hearing (Doc. Id. 9897)
26. Motion to Withdraw as Employee's Counsel (Doc. Id. 9990)
27. Employer's Response to Motion to Withdraw as Counsel (Doc. Id. 10113)
28. Docketing Notice – Motion to Withdraw (Doc. Id. 10155)
29. Order Granting Motion to Withdrawal (Doc. Id. 10576)
30. Employee's Notice of Filing – Medical Records (Doc. Id. 11969)
31. Employer's Motion for Extension of Time to File Additional Proof and Supplemental Position Statement (Doc. Id. 12556)
32. Subpoenas – Hearing Testimony (Doc. Id. 12557)
33. Affidavit of Vince Price (Doc. Id. 12657)
34. Employer's Notice of Filing – Medical Report of Dr. Alexander (Doc. Id. 12741)
35. Affidavit of J. Sidney Alexander (Doc. Id. 12740)
36. Employer's Notice of Filing – Exhibits to Employee's Deposition (Doc. Id. 12818)
37. Employer's Notice of Filing – Deposition of Employee (Doc. Id. 12817)
38. Affidavit of Michael Woods (Doc. Id. 12816)
39. Employer's Witness and Exhibit List (Doc. Id. 12815)
40. Employer's Supplemental Position Statement (Doc. Id. 12905)
41. Employee's Notice of Filing – Statements (Doc. Id. 12938)
42. Employee's Notice of Filing - Curriculum Vitae of Dr. Randall May (Doc. Id. 12937)
43. Order Granting Motion for Additional Time (Doc. Id. 13305)

The parties introduced the following exhibits:

1. Affidavit of Mr. Creasman
2. Deposition of Mr. Creasman
   - Attached Exhibits
3. Affidavit of Roger Bible
4. Affidavit of Leonard Poole
5. Affidavit of Jeff Roberts

6. Affidavit of Vince Price
7. Affidavit of James Gasche
8. Affidavit of Barry Hayes
9. Affidavit of Michael Woods
10. Affidavit of D. Malcolm Spica, Ph.D.
    - Affidavit
    - Curriculum Vitae
11. Independent Medical Report of Dr. J. Sidney Alexander
    - Affidavit
    - Curriculum Vitae
12. Personnel File of Mathew Creasman
13. Employee's Discovery Responses to Employer's Discovery Requests
14. Employer's Responses to Employee's Discovery Requests
15. Medical Records of Dr. Jose Malagon, Clinton Family Physicians
16. Medical Records of Dr. Randall May
17. Curriculum Vitae of Dr. Randal May
18. Statements Submitted by Mr. Creasman

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on January 17, 2019.

| Name | U.S. Mail, First Class | Email | Service sent to: |
|---|---|---|---|
| Matthew Ryan Creasman, Self-Represented Employee | X | X | 1601 Hidden Hills Drive Clinton, TN 37716 Mcreasman111@yahoo.com |
| Stephen K. Heard Employer's Attorney | | X | skheard@cclawtn.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

9